IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS
APPELLATE DIVISION

ANGELINA B. CANDELARIA,           )       DCA NO. 84-9007
                                  )
         Plaintiff-Appellee,      )       OPINION
                                  )
    vs.                           )
                                  )
YANO ENTERPRISES, INC., et al.,   )
                                  )
         Defendant-Appellants.    )
_____)

Before: DUENAS, LAURETA, and WEIGEL, District Judges

WEIGEL, District Judge:

Appellee Angelina B. Candelaria filed this false imprisonment action against appellants Yano Enterprises, Inc., and Yoshio Kamata, its president. The trial court entered judgment for appellee in the amount of $2000; and appellants now appeal.

Appellee is a Filipina worker who first came to Saipan in July of 1982 to work as a singer in appellants' nightclub. She worked there from August 7, 1982 until September 6, 1982. During this time, she, along with other female nightclub employees, was housed in appellants' "barracks".

The barracks consists of two bedrooms separated by a common kitchen and bathroom area. Appellee and four other employees slept in one bedroom, the other bedroom was occupied by their supervisor. There are five doors in the barracks: door #1 is the entrance to the supervisor's room; door #2 is the entrance to

appellee's room; door #3 separates the supervisor's room and the kitchen; door #4 separates appellee's room and the kitchen; door #5 is the kitchen entrance.

Between August 7, 1982, and September 6, 1982, pursuant to appellants' orders, doors #2 and #5 were padlocked between the hours of 3:00 a.m. and 10:00 a.m. The supervisor held the only key. Appellants concede that this was done to keep the employees from meeting with friends (ostensibly male) during early morning hours. The employees never gave appellants permission to install the padlocks.

Because of the locks, the only way for appellee to leave the barracks between the hours of 3:00 a.m. and 10:00 a.m. was to ask the supervisor's permission. The supervisor testified that she never refused appellee or any other employee permission to leave the barracks, and that, if she herself ever left the premises between 3:00 a.m. and 10:00 a.m., she would always leave the key with another girl. Appellee acknowledged that the supervisor had on occasion let her out of the barracks between 3:00 a.m. and 10:00 a.m. to accompany her to breakfast. However, she testified that the supervisor had, at other times, denied her permission to leave, and that, at least on one occasion, she had pounded on door #3, asking to be let out, but the supervisor had not been there.

The trial court found that from August 7, 1982 to September 6, 1982, appellee and her co-workers were not free to leave the barracks between 3:00 a.m. and 10:00 a.m. The court concluded that appellee had been falsely imprisoned, and awarded her $2000 in damages. Appellants now appeal the trial court's judgment,

contending that appellee was not falsely imprisoned because she was permitted to leave the barracks between 3:00 a.m. and 10:00 a.m., and because she consented to being confined there during those hours.

1. Confinement

The essential elements of the tort of false imprisonment are (1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint. Ware v. Dunn, 80 Cal. App. 2d 936, 943, 183 P.2d 128, 132 (1947). Appellants do not contend that they were lawfully privileged to install padlocks on the barracks doors or to restrain appellee's liberty in any other way. Rather, they argue that appellee was not "detained" or "restrained" in the barracks because there was evidence that she was permitted to leave during the times in question.

There was no evidence that appellants or any of their agents ever threatened appellee while she attempted to leave. The supervisor testified that appellee was always permitted to leave the barracks during the times in question, and appellee admitted that she had, on occasion, been permitted to leave. However, the trial court found that appellee and her co-workers were not permitted to leave the barracks from August 7, 1982 to September 6, 1982 between 3:00 a.m. and 10:00 a.m. This finding is supported by the testimony of both appellee and a co-worker, who stated that they had been unable to leave the barracks on several occasions. Because the trial court's finding is supported by substantial evidence, it should not be disturbed on appeal.

223

Appellants also suggest that appellee was not imprisoned in the barracks because she could have gone through door #3, into the supervisor's room, and left through door #1. The supervisor testified that door #3 was never kept locked. However, appellee and a co-worker both testified that they had tried to open door #3 between 3:00 a.m. and 10:00 a.m., but could not do so because it was locked. The trial court found that "[d]uring the times in question here, door #3 was locked from the [the supervisor's side]." This finding is supported by substantial evidence, and should not be disturbed.

## 2. Consent

Appellants also contend that they are not liable for falsely imprisoning appellee because her confinement was not against her will. Appellee remained in appellants' employment and continued to be housed in their barracks even after she knew she would be locked in between 3:00 a.m. and 10:00 a.m. Appellants contend that appellee therefore consented to being confined during those hours.

The record clearly shows that appellee never explicitly consented to being confined in the barracks. Moreover, evidence that she was not continuously confined there would not establish her consent for periods during which she was confined. Appellee did not allege that she was falsely imprisoned over the entire period from August 7 to September 6, 1982; rather, she contended that she had been falsely imprisoned for certain periods of each day. Any period of unlawful confinement, however brief, may create liability for false imprisonment. Ware, 80 Cal. App. 2d at 943, 183 P.2d at 132.

224

There are also reasons why appellee would not leave the barracks even given the opportunity to do so. She was an alien who had been in Saipan for less than a month, and apparently knew few people other than her fellow employees. She could have reasonably believed that appellants had the right to confine her to the barracks, and that she had no right to leave. The record shows that she became aware of her rights only after consulting with an attorney. For these reasons, the fact that she continued to reside in the barracks after she became aware of her confinement cannot be construed as consent to such confinement.

The judgment of the trial court is affirmed.

_____
CRISTOBAL C. DUENAS, District Judge

_____
ALFRED LAURETA, District Judge

_____
STANLEY A. WEIGEL, District Judge